UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ALTURA ST. MICHAEL EWERS,

        Plaintiff,

      - against -

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION OFFICERS ALEXIS
GOODRIDGE, NATHALIE MENDOZA, MICHAEL
HAYWOOD, CAPTAIN ROBERT DIAZ, JOHN AND
JANE DOE CORRECTION OFFICERS #1-5, CORIZON
HEALTH, INC., and JOHN AND JANE DOE
MEDICAL PROVIDERS #6-10,

        Defendants.
------------------------------------X

**MEMORANDUM AND ORDER**

17 Civ. 1116 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    Plaintiff Altura St. Michael Ewers ("Ewers" or "plaintiff")
brings this action pursuant to 42 U.S.C. § 1983 against the City of
New York and New York City Department of Correction Officers Alexis
Goodridge ("Goodridge"), Nathalie Mendoza ("Mendoza"), Michael
Haywood ("Haywood"), Captain Robert Diaz ("Diaz"), John and Jane Doe
Correction Officers #1-5, Corizon Health, Inc. ("Corizon"), and John
and Jane Doe Medical Providers #6-10, seeking damages for defendants'
alleged failure to protect plaintiff and indifference to injuries
plaintiff sustained at the hands of a fellow inmate while he was
incarcerated at Rikers Island Correctional Facility ("Rikers
Island"). Plaintiff asserts claims for failure to protect and
deliberate indifference to a serious medical need against Goodridge,
Mendoza, Haywood, and Diaz (together, the "Correction Officer

Defendants"), as well as against John and Jane Doe Correction Officers #1-5; a claim of deliberate indifference to a serious medical need against Corizon and John and Jane Doe Medical Providers #6-10 (together, the "Medical Provider Defendants"); and a <u>Monell</u> claim alleging unconstitutional practices and policies against the City of New York. Further, plaintiff asserts against all defendants state law claims of negligence, intentional infliction of emotional distress, and negligent training and supervision.[1] Before the Court is defendants' motion for summary judgment.

## I. <u>Background</u>[2]

Plaintiff was an inmate at the George Motchan Detention Center on Rikers Island while facing charges in the New York State Supreme Court of grand larceny, money laundering, and falsifying business records. 56.1 Statement ¶¶ 3-4.[3] At Rikers Island, plaintiff was

---

[1] As a preliminary matter, plaintiff's claims against defendants John and Jane Does #1-10 are dismissed. Plaintiff has failed to identify the unnamed defendants despite having had ample time to do so. See Coward v. Town & Vill. of Harrison, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (Plaintiff "simply cannot continue to maintain a suit against" the John Doe defendant where there was "no indication that [plaintiff] had made any effort to discover the [defendant's] name") (internal quotation marks omitted). We note in particular that plaintiff had access to his own medical records.

[2] The following facts are drawn from the Rule 56.1 statement submitted by defendants on September 9, 2020, ECF No. 127 ("56.1 Statement"); the exhibits submitted contemporaneously with defendants' motion for summary judgment and appended to the declaration of Erin Ryan, ECF No. 125; and the exhibits submitted with plaintiff's opposition to defendants' motion for summary judgment, which are appended to the opposition submission itself, ECF Nos. 135-1, 135-2, and to the Affidavit of Altura St. Michaels Ewers, ECF No. 134. Plaintiff failed to submit an opposition to defendants' Rule 56.1 statement.

[3] At the same time, the Securities and Exchange Commission brought a civil action against plaintiff in the Southern District of New York. In that case, Judgment was entered against Ewers on December 11, 2015 based on his consent to such entry and his acknowledgment of his plea in state court, in which he admitted to using a bank account in the name of Ssecurion LLC ("Ssecurion") to deposit over $9 million taken from Camelot Acquisitions Secondary Opportunities LP (the "Fund"); falsely representing to the Fund's auditors that invoices for the payments

2

placed in a housing unit with approximately 62 general population inmates.  Id. ¶¶ 5-6.

Plaintiff claims that, prior to the incident that is the subject of this lawsuit, he filed multiple written grievances regarding an inmate named Charles Hamilton ("Hamilton"), whom he claims threatened him on a number of occasions.  However, despite numerous diligent searches, the Department of Correction has no record of plaintiff ever filing a written grievance during his time at Rikers Island, nor has plaintiff produced any copy of any grievance he filed.  Id. ¶¶ 24-25; see also ECF No. 125-8 (Department of Correction Memorandum detailing the result of exhaustive searches for grievances filed by plaintiff).

Likewise, plaintiff testified that he made oral complaints about Hamilton to various correction officers.  However, he has not identified to whom he made these complaints.  ECF No. 125-3 (Deposition of Ewers) at 101:10-18, 103:6-21.  Arun Ganguly, a fellow inmate, testified that he witnessed plaintiff complain orally to correction officers about threats from Hamilton at least six times.  ECF No. 134-2 (Deposition of Arun Ganguly) at 65-67.  Ganguly could not recall any of the names of the correction officers to whom

---

from the Fund to Ssecurion related to due diligence fees performed by Ssecurion; transferring most of the stolen funds to a bank account for Camelot Group International, LLC; spending $319,137.39 of the stolen funds on various personal or other expenses; and engaging in such misconduct without the permission or authority of the Fund.  See ECF No. 125-14 (Final Judgment issued against Ewers in SEC v. Lawrence E. Penn III, et al., 14 Civ. 0581).

plaintiff orally complained with the exception of Officer Haywood.
Id.

The incident that is central to this dispute took place on November 23, 2014. That day, Officer Goodridge escorted plaintiff's housing unit to the mess hall for lunch. 56.1 Statement ¶ 7. At about 12:40 p.m., plaintiff sat down at a table next to Hamilton. Id. ¶ 8. Plaintiff and Hamilton had a verbal disagreement about whether plaintiff invaded Hamilton's personal space, and plaintiff subsequently moved to a different table. Id. ¶¶ 10-11. Several minutes later, Hamilton ran over to plaintiff and punched him in the facial area. Id. ¶ 13. Officer Goodridge yelled at Hamilton to stop as he saw him running toward plaintiff. Id. ¶ 15. Plaintiff testified that he "couldn't focus on anything else except for [Hamilton] giving [him] the blows to the head" and "things kind of became jumbled." Id. ¶ 14. Officer Goodridge ran toward the fight along with other unnamed correction officers, instructing both plaintiff and Hamilton to stop fighting. Id. ¶¶ 16-17. Notably, Officers Mendoza and Haywood were not working during the incident and Captain Diaz was not present in the mess hall at the time. Id. ¶¶ 27-29.

Plaintiff and Hamilton were escorted from the mess hall and brought to Intake while waiting to be seen at the medical clinic. Id. ¶ 18. Captain Diaz was present at Intake. Id. ¶ 29. At 1:10 p.m., approximately 30 minutes after the fight, plaintiff was seen by a doctor at the medical clinic. Id. ¶ 19. That night, after

continuous treatment at Rikers Island throughout the day, plaintiff was transferred to Bellevue Hospital.  Id. ¶ 20.  Plaintiff was admitted to Bellevue Hospital for three days and returned to Rikers Island on November 26, 2014.  Id. ¶ 21.

Over the next 30 days, plaintiff was treated at the Rikers Island medical clinic nine times, on November 28, December 3, December 6, December 8, December 9, December 10, December 19, December 22, and December 26.  Id. ¶ 23.  During one of these visits, on December 8, 2014, plaintiff complained about his eye to medical staff.  Id. ¶ 22.  The following day, on December 9, 2014, he was taken to Bellevue Ophthalmology.  Id.

On December 18, 2014, plaintiff pled guilty to charges of grand larceny, money laundering, and falsifying business records in New York State Supreme Court.  Id. ¶ 32; ECF No. 125-13 (Certificate of Disposition).  On January 23, 2015, plaintiff filed a notice of motion to withdraw his plea, arguing that he did not enter his plea voluntarily, as he was "unduly influenced by the prison conditions and the lack of medical attention he was experiencing at Rikers Island" following his severe beating by an inmate who had been "constantly threaten[ing]" him.  ECF No. 134-1 (Notice of Motion to Withdraw Plea) at 5.  The New York State Supreme Court denied Ewers' motion, stating that at the plea, "the court specifically asked whether the pain he was enduring was 'affecting his ability to understand what's going on or forcing him to plead.'  The defendant responded, 'no.'"  Decision & Order, Ind. #73/14, Feb. 17, 2015.

The New York State Supreme Court also explained that Ewers' "choice to remain in his housing location while considering the plea offer . . . contradict[s] [Ewers'] allegations of duress." Id. In any event, a few months later, in the SEC action in federal court, plaintiff consented to the entry of judgment based on the conduct to which he pled guilty in state court. ECF No.125-14 (Final Judgment issued against Ewers in SEC v. Lawrence E. Penn III, et al., 14 Civ. 0581).

## II.  **Procedural History**

From the outset of the case, plaintiff was represented by attorneys Carmen S. Giordano and Stephanie Behler of Giordano Law Offices PLLC.  Thus, while plaintiff appears pro se now, he was represented by counsel for the first two-and-a-half years of the case.  Plaintiff filed his initial complaint on February 14, 2017, and shortly thereafter filed an amended complaint on February 28, 2017, both of which alleged federal claims pursuant to 42 U.S.C. § 1983.  ECF Nos. 1, 11.  On July 17, 2017, the Court approved a stipulation whereby the parties agreed to consolidate plaintiff's causes of action pending in state court with the instant action, and accordingly plaintiff filed his second amended complaint — the operative complaint — on July 18, 2017, which integrated state law claims.  ECF No. 39 ("SAC").

On August 14, 2019, following document discovery and depositions, plaintiff's counsel moved to withdraw.  ECF No. 86. Following an exchange of submissions regarding the proposed

withdrawal, ECF Nos. 88-89, the Court scheduled a show cause hearing on October 10, 2019, ECF No. 94. Plaintiff did not appear at the hearing, nor did plaintiff comply with the Court's order directing plaintiff to furnish the Court with an explanation concerning the basis of his non-appearance and any request to reschedule the hearing. ECF No. 101. After two months during which plaintiff failed to communicate in any manner with the Court, we granted counsel's request for withdrawal on December 12, 2019. ECF No. 104.

Defendants moved for summary judgment on September 9, 2020, plaintiff opposed the motion on November 13, 2020, and defendants filed a reply in further support of their motion on November 30, 2020. ECF Nos. 124, 128, 132, 136. For the reasons below, the Court grants defendants' motion in its entirety.

## III.  Legal Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it might affect the outcome of the suit under governing law." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted) (quoting Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)). A factual dispute is genuine if a reasonable factfinder could decide in the nonmoving party's favor. Id.

At summary judgment, the moving party must "make a prima facie showing that it is entitled to summary judgment." Celotex Corp. v.

7

Catrett, 477 U.S. 317, 331 (1986).  If the moving party puts forth such a showing, then there is no issue for trial unless the party opposing summary judgment presents "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Put another way, summary judgment is appropriate if, 'even after drawing all inferences in the light most favorable to [the plaintiff], no reasonable jury could have issued a verdict in [his] favor.'" Meyer v. Shulkin, 710 F. App'x 453, 455–56 (2d Cir. 2017), as amended (Oct. 11, 2017) (citing Jeffreys, 426 F.3d at 554).

"Pro se litigants are afforded 'special solicitude' on motions for summary judgment." Minus v. City of New York, 488 F. Supp. 3d 58, 63 (S.D.N.Y. 2020) (citing Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988)).  "Courts read the pleadings, briefs, and opposition papers of pro se litigants 'liberally and interpret them "to raise the strongest arguments that they suggest."'" Id. (citing McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)).  However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citation omitted); see also Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read pro se pleadings liberally "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment").  "[A] pro se party's 'bald assertion,' completely

unsupported by evidence, is not sufficient to overcome a motion for summary judgment." <u>Sandoz v. Doe</u>, No. 17 Civ. 5447, 2020 WL 3318262, at *4 (S.D.N.Y. June 18, 2020) (citing <u>Lee v. Coughlin</u>, 902 F. Supp. 424, 429 (S.D.N.Y. 1995)); <u>see also</u> <u>Bennett v. James</u>, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding the deference to which a pro se litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion, [the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial.") (internal quotation marks and citation omitted).

## IV.  **Discussion**

### A. **Rule 56.1 Statement**

At the outset, we note that plaintiff did not oppose defendants' 56.1 statement, which is required by Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(b).  Local Rule 56.1(b) provides that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Rule 56.1(c) further explains that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly

numbered paragraph in the statement required to be served by the opposing party."

Consistent with Local Rule 56.2, contemporaneously with filing the instant motion for summary judgment, defense counsel filed a "Notice to Pro Se Litigant Who Opposes a Summary Judgment," which apprised plaintiff of his responsibilities by setting forth the precise steps that plaintiff should follow when opposing defendants' motion — including submitting an opposition to defendants' 56.1 statement. See ECF No. 126. Thus, even with the leniency afforded to pro se litigants, plaintiff cannot overcome his failure to oppose defendants' 56.1 statement.

Under these circumstances, we could rely on plaintiff's failure to file an opposition to defendants' Rule 56.1 Statement and deem every fact in the Rule 56.1 Statement admitted. Nonetheless, in deference to plaintiff's pro se status, as relevant, we will utilize certain citations in plaintiff's opposition brief and evidence in his exhibits. Where the Court relies on facts drawn from defendants' Rule 56.1 statement, "it has done so because [plaintiff] has not disputed those facts or has not done so with citations to admissible evidence." Morey v. Somers Cent. Sch. Dist., No. 06 Civ. 1877, 2010 WL 1047622, at *1 n.3 (S.D.N.Y. Mar. 19, 2010), aff'd, 410 F. App'x 398 (2d Cir. 2011) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citing Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003)).

## B. Failure to Protect

Plaintiff's first claim is against the Correction Officer Defendants, alleging that they were indifferent to his safety prior to the incident and failed to defend him during his fight with Hamilton. We construe plaintiff's claim as a failure to protect claim. As plaintiff was in pre-trial detention at the time of the alleged incident, plaintiff's claim arises under the due process clause of the Fourteenth Amendment, which safeguards against unconstitutional conditions of confinement. Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).[4]

Before evaluating the sufficiency of the failure to protect claim, however, "a plaintiff must also show a defendant's direct or personal involvement in the alleged Constitutional deprivation." Desulma v. City of New York, No. 98 Civ. 2078, 2001 WL 798002, at *5 (S.D.N.Y. July 6, 2001) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995)). "Personal involvement may take one of four forms: (1) direct participation in the infractions; (2) failure of a supervisory official to remedy wrong after learning of violation; (3) creation or sanction by a supervisory official of policy or custom under which unconstitutional practices occur; or, (4) gross negligence in managing subordinates." Id. (citing Williams v. Smith,

---

[4] "Although Darnell involved a Fourteenth Amendment challenge to a prisoner's conditions of confinement, its holding applies with equal measure to failure to protect claims." Taylor v. City of New York, No. 16 Civ. 7857, 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018).

781 F.2d 319, 323 (2d Cir. 1986)). Only potentially direct participation in the incident is at issue in this case.

Assuming that a plaintiff has demonstrated a defendant's personal involvement, to establish a Section 1983 claim for allegedly unconstitutional conditions of confinement, including a failure to protect, a plaintiff must satisfy an objective prong and a mens rea prong. Darnell, 849 F.3d at 29. First, "[t]o establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness.'" Id. at 30 (internal quotation marks and citations omitted). In the context of a failure to protect claim, "[c]ourts have found that a substantial risk of harm can only be demonstrated where there is evidence of a previous altercation between a plaintiff and his attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker." Dublin v. New York City L. Dep't, No. 10 Civ. 2971, 2012 WL 4471306, at *5 (S.D.N.Y. Sept. 26, 2012). Second, to establish the mens rea prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35. Given these standards, we note

that not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Bouknight v. Shaw, No. 08 Civ. 5187, 2009 WL 969932, at *3 (S.D.N.Y. Apr. 6, 2009) (citing Farmer v. Brennan, 551 U.S. 825, 832 (1994)).

### i. Alleged Failure to Protect Prior to the Incident

We first assess plaintiff's claim for failure to protect prior to the incident, wherein plaintiff alleges that the Correction Officer Defendants failed to respond to his written grievances or oral complaints about Hamilton.

### 1. Personal Involvement

As an initial matter, plaintiff's claims against most of the Correction Officer Defendants fail for lack of personal involvement.

First, the defendants have made a prima facie showing that plaintiff never filed written grievances or, at a minimum, that no individual defendant was aware of any written grievance. Defendants have met their burden on this issue by reference to the Department of Correction's exhaustive efforts to locate grievances filed by plaintiff, which revealed no record of plaintiff ever filing a written grievance at any point during his time on Rikers Island — let alone a grievance about Hamilton. See 56.1 Statement ¶ 24; ECF No. 125-8 (Department of Correction Memorandum detailing steps to locate written grievances). Moreover, plaintiff's entirely inconsistent testimony regarding the filing of written grievances against Hamilton is insufficient to raise a genuine issue of material

fact on this matter. Compare ECF No. 125-11 at 20:21-25 (50-h testimony, wherein plaintiff claimed he filed one written grievance) with ECF No. 125-3 at 123:1-18 (plaintiff's deposition, wherein plaintiff claimed he filed a grievance every two days, for a total of 6-12 written complaints about Hamilton threatening him); see also ECF No. 125-3 at 102:11-13, 106:20-21, 108-112 (plaintiff's deposition, wherein he explains that he filed multiple written grievances).

Even assuming that plaintiff had filed written grievances, there is no indication that any of the named defendants were privy to or made aware of them. By plaintiff's own testimony, plaintiff did not ever deliver a written grievance specifically to an officer, nor did he identify any officer who saw him place a grievance in the grievance box. See ECF No. 125-3 (Deposition of Ewers) at 113-14, 118. The Court thus concludes that there is no genuine dispute that the Correction Officer Defendants did not receive, or were not aware, of written grievances regarding Hamilton's threats.

We next turn to the subject of oral complaints. Significantly, plaintiff himself does not claim to have made any oral complaints regarding Hamilton to Captain Diaz or Officer Goodridge. 56.1 Statement ¶¶ 26, 30. Plaintiff's testimony regarding his communication of oral complaints to Officer Mendoza is vague, as plaintiff merely "assumes" that he complained to Officer Mendoza based on "probability." ECF No. 125-3 at 101:10-18. In contrast, Officer Mendoza has clearly affirmed that plaintiff never complained

to her.  ECF No. 125-9 ¶¶ 6-7.  Thus, plaintiff has failed to raise a genuine issue of material fact regarding the Correction Officer Defendants' showing of no personal involvement with respect to Captain Diaz, Officer Goodridge, and Officer Mendoza.

## 2. Failure to Protect

We now assess plaintiff's claim for failure to protect prior to the incident against Officer Haywood.  Even though Officer Haywood was off-duty during the incident, and even though there was no history of physical altercations between Hamilton and Ewers, plaintiff nevertheless claims that Officer Haywood should have taken action to protect him from Hamilton's verbal threats.[5]  This is so even though plaintiff himself could not recall with certainty whether he ever actually complained to Officer Haywood.  Plaintiff shakily testified that he "assumes" that he complained to Officer Haywood but explains that he also could have complained to a different officer entirely.  ECF No. 125-3 at 103:6-21.  Plaintiff thus relies on a fellow inmate, who testified to a single incident during which plaintiff orally complained to Officer Haywood that "[t]he guy is threatening to beat me up, he's trying to kill me."  ECF No. 134-2

---

[5] In asserting his claim regarding the Correction Officer Defendants' responses to his written grievances and oral complaints, plaintiff seeks to have it both ways.  On one hand, he strenuously maintains that he filed written grievances, which should have put defendants on notice about Hamilton's threats.  On the other hand, plaintiff suggests that upon receipt of his oral complaints, defendants, such as Officer Haywood, should have memorialized plaintiff's concerns about Hamilton so that the other defendants knew about them.  However, had plaintiff actually filed his written grievances as he claims, then the memorialization of the oral complaints by Officer Haywood would have been duplicative.

(Deposition of Arun Ganguly) at 66:10-16.[6]  However, Ganguly also acknowledged that Officer Haywood "looked after" plaintiff and Ganguly, and said, "Don't worry, I got your backs." Id. at 66:2-7. Far from failing to protect plaintiff, Ganguly's testimony suggests that Officer Haywood did not ignore plaintiff's concerns.

In any event, even if plaintiff had orally complained once to Officer Haywood, plaintiff's claim fails on the law, as plaintiff has not shown that Hamilton's verbal threat alone posed "an unreasonable risk of serious damage" to plaintiff.  Darnell, 849 F.3d at 30.  In the context of a failure to protect claim where a plaintiff alleges that another inmate threatened him, "verbal statements alone do not indicate a substantial threat of serious harm." Desulma, 2001 WL 798002, at *7; see also Urena v. Fischer, 08 Civ. 1309, 2010 WL 2134564, at *8 (N.D.N.Y. Apr. 16, 2010) ("[C]onditions posing a substantial risk of serious harm . . . can be shown by evidence that an inmate had a previous altercation with his attacker and has complained about the incident."). Plaintiff has not provided any evidence that he and Hamilton engaged in prior physical altercations that should have indicated to Officer Haywood that there was an "unreasonable risk" of serious harm to plaintiff, as is required for plaintiff to succeed on his failure to protect claim. See Desulma, 2001 WL 788002, at *7; Dublin, 2012 WL 4471306,

---

[6] Without reference to Ganguly's deposition transcript, defendants dispute that Ganguly observed plaintiff's complaint to officers.  ECF No. 136 at 5. However, viewing the evidence in the light most favorable to plaintiff, the Court relies on Ganguly's testimony on this point.

at *5.  A single communication of a verbal threat to a correction officer, without more, is insufficient as a matter of law to trigger a failure to protect claim.[7]  Therefore, the Court grants summary judgment to defendants on the first prong of plaintiff's failure to protect claim.

### ii. Failure to Protect During the Incident

We now assess plaintiff's claim alleging that the Correction Officer Defendants failed to protect him during the incident.

### 1. Personal Involvement

Plaintiff's second part of the claim alleging a failure to protect during the incident also fails against most of the Correction Officer Defendants for lack of personal involvement.  Officers Mendoza and Haywood were not working during the incident and Captain Diaz was not present in the mess hall at the time; plaintiff encountered Captain Diaz only after the fight at Intake.  Id. ¶¶ 27-

---

[7] We note that there are some cases in this District in which the court denied motions to dismiss or summary judgment where a plaintiff informed a defendant that he had a specific fear of assault and then was assaulted, even where there was no prior physical altercation.  These cases are distinguishable.  First, as distinct from the instant case, where plaintiff alleges that another inmate threatened him, a number of these cases involve inmates' complaints about threats from officers.  See, e.g., Beckles v. Bennett, No. 05 Civ. 2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008); Albritton v. Morris, No. 13 Civ. 3708, 2016 WL 1267799, at *14 (S.D.N.Y. Mar. 30, 2016); Stephens v. Venettozzi, No. 13 Civ. 5779, 2016 WL 929268, at *20 (S.D.N.Y. Feb. 24, 2016), report and recommendation adopted sub nom. Stephens v. Venetozzi, No. 13 Civ. 5779, 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016), and report and recommendation adopted, No. 13 Civ. 5779, 2016 WL 4272376 (S.D.N.Y. Aug. 5, 2016).  Second, in Villa v. Westchester Cty., No. 19 Civ. 428, 2020 WL 4505968, at *7 (S.D.N.Y. Aug. 5, 2020), the Court denied a motion to dismiss a failure to protect claim, but that case involved overt conduct in addition to an oral threat.  There, another inmate directed "sexual advances and erratic behavior" toward the plaintiff, and the plaintiff complained to an officer about this conduct.

29.  Thus we need only assess this part of the claim with respect to Officer Goodridge.

## 2. Failure to Protect

Here, the parties do not dispute that plaintiff faced an objectively substantial risk of serious harm during the incident. Darnell, 849 F.3d at 30.  However, in order to succeed on his failure to protect claim, plaintiff also must prove that the prison official "recklessly failed to act with reasonable care to mitigate the risk." Id. at 35.

As an initial matter, plaintiff has not pointed to any evidence to support the position that Officer Goodridge should have been on notice that Hamilton posed a threat to plaintiff prior to the incident, as plaintiff does not claim to have filed written grievances with Officer Goodridge or communicated his complaints orally to Officer Goodridge.  56.1 Statement ¶ 26.  Most importantly, the facts show that during the incident itself, Officer Goodridge yelled at Hamilton to stop running toward plaintiff, and that Officer Goodridge arrived within seconds to break up the fight.  Id. ¶¶ 15-16.[8]  As it is undisputed that Officer Goodridge reacted swiftly to the incident, it cannot be said that he acted recklessly toward plaintiff during the incident.  Darnell, 849 F.3d at 35. Accordingly, the Court grants summary judgment to the Correction

---

[8] Ganguly's testimony that "a number of CO's basically did nothing," ECF No. 134-2 at 24:22-23, is irrelevant to the evaluation of the remaining defendant on this claim, Officer Goodridge.

Officer Defendants on the second prong of plaintiff's failure to protect claim.

## C. Deliberate Indifference to a Serious Medical Need

Plaintiff next claims that the Correction Officer Defendants and Corizon were indifferent to his serious medical needs when they failed to provide him with timely and continuing access to medication and medical assistance. To prevail on a constitutional claim of deliberate indifference to medical needs, a plaintiff must prove that he suffered from an objectively serious medical condition, which the defendants knew of and deliberately disregarded. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Further, to state a claim for deliberate indifference, a plaintiff must plead that defendants acted with a sufficiently culpable state of mind. Woods v. Goord, No. 97 Civ. 5143, 1998 WL 740782, at *7 (S.D.N.Y. Oct. 23, 1998). As the "inadvertent or negligent failure to provide adequate medical care does not rise to the level of deliberate indifference, allegations of medical malpractice or negligent treatment are insufficient to state a claim under section 1983." McNair v. Heyman, No. 15 Civ. 4532, 2016 WL 6820736, at *3 (S.D.N.Y. Sept. 19, 2016) (citing Estelle, 429 U.S. at 105-106)).

As plaintiff was in pre-trial detention at the time of the alleged incident and thus not being "punished," the Eighth Amendment proscription against "cruel and unusual punishment," which typically applies to deliberate indifference claims, does not strictly apply. Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000). Instead, the

Fourteenth Amendment applies, but the applicable test is the same. Id.

The issue presented here focuses on the deliberate indifference prong rather than the serious medical condition prong. However, an examination of plaintiff's medical records demonstrates that plaintiff received consistent medical treatment following the incident. To start, according to plaintiff's medical records, plaintiff received medical treatment at Rikers Island within 30 minutes of the incident, 56.1 Statement ¶ 19, and subsequently spent three days at Bellevue Hospital, id. ¶¶ 20-21. Plaintiff argues that he was denied medical treatment throughout the remainder of his stay at Rikers Island, notwithstanding that his medical records show that he visited the Rikers Island medical clinic nine times in the month following his return from Bellevue Hospital. 56.1 Statement ¶ 23.

In fact, plaintiff's claims about his lack of medical treatment are repeatedly contradicted by his medical records. See, e.g., Campbell v. Hanson, No. 17 Civ. 1024, 2019 WL 2717691, at *5 (S.D.N.Y. June 28, 2019) ("Plaintiff's word alone is not enough to create a genuine dispute of material fact, particularly when that word is contradicted by medical documents."). For example, though plaintiff claims that he was denied his pain medication, his medical records reveal that he was prescribed Tylenol upon his return from Bellevue Hospital, ECF No. 125-6 at DEF 1414-17, and that defendants prescribed him a muscle relaxer when he complained of pain in his

right arm and in his neck, id. at DEF 1404-1405, 1392-1394. Plaintiff's claim that defendants did not take him to see an ophthalmologist for one to two months, SAC ¶ 35, is similarly belied by his medical records, which show that he was brought to see an ophthalmologist at Bellevue Hospital on December 9, 2014 — the day after he complained about his eye and 16 days after the incident. 56.1 Statement ¶ 22.

As plaintiff's medical records demonstrate plaintiff's medical treatment, and because plaintiff does not present evidence to the contrary,[9] defendants' motion for summary judgment on the medical indifference claim is granted. See, e.g., Bellamy v. McMickens, 692 F. Supp. 205, 213 (S.D.N.Y. 1988) (granting summary judgment where defendants submitted "voluminous medical records" indicating that "plaintiff's condition was closely monitored").

### D. Monell Claim

Plaintiff next asserts a Monell claim against the City of New York, claiming that the City of New York failed to properly train, supervise, discipline, or terminate from employment the individual defendants named in his complaint and failed to maintain

---

[9] Plaintiff's reliance on his motion to withdraw his plea based on his denial of adequate medical care, ECF No. 134-1, is insufficient, as his motion, which was denied, does not alter the fact that he in fact received medical care. See supra at 5-6. Similarly, there is no basis to conclude that a state court order directing that plaintiff receive medical care was based on any determination that he had been denied such care. Further, plaintiff's reliance on generalized articles and reports about medical mistreatment at prisons — one of which focuses on the treatment of adolescent male inmates at Rikers Island, ECF No. 134-8, and another which focuses on the outsourcing of health care at prisons and jails generally, ECF No. 134-9 — does not suffice to prove plaintiff's claim.

constitutionally adequate policies.[10]  "To hold a municipality such as the City liable as a 'person' within the meaning of § 1983, a plaintiff must establish that the municipality itself was somehow at fault."  Lilly v. City of New York, No. 11 Civ. 194 , 2011 WL 10894910, at *2 (S.D.N.Y. Aug. 24, 2011); Monell v. Dep't of Social Services, 436 U.S. 658, 691 (1978) (liability exists only where "action pursuant to official municipal policy of some nature caused a constitutional tort").

However, "[i]t is well settled that a municipality may not be held liable where there is no underlying constitutional violation by a municipal official."  Levy v. Alfano, 47 F. Supp. 2d 488, 498 (S.D.N.Y. 1999), aff'd, 208 F.3d 203 (2d Cir. 2000); see also Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006); City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("[None] of our cases authorize[] the award of damages against a municipal corporation based on the actions of one of its officers . . . [i]f a person has suffered no constitutional injury. . . .").  Since we have dismissed plaintiff's claims against the individual officers, defendants are also awarded summary judgment on plaintiff's municipal liability claim.

---

[10] In his complaint, plaintiff sets forth a nineteen-item list of deficient policies, which "includ[e] but [are] not limited to," e.g., failure to permit access to timely medical care; instating a culture of bias toward inmates accused of white collar crimes; failure to provide appropriate staffing levels for the timely transport of gravely injured inmates; and failure to screen and monitor correctional staff to identify members at risk of engaging in serious misconduct. SAC ¶ 61.

### E. State Law Claims

Having dismissed each of plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims for negligence, intentional infliction of emotional distress, and negligent training and supervision. Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir. 1986) ("[F]ederal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment. . . ."); see also Gerard v. City of New York, No. 17 Civ. 8076, 2019 WL 4194220, at *6 (S.D.N.Y. Sept. 3, 2019), aff'd, No. 19-3102, 2021 WL 485722 (2d Cir. Feb. 10, 2021).

## V.   Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary judgment in its entirety. The Clerk of Court is respectfully directed to enter judgment for defendants, terminate the motion pending at docket entry 125, and close this case.

**SO ORDERED.**

DATED:    New York, New York
          May 28, 2021

                          _____
                          NAOMI REICE BUCHWALD
                          UNITED STATES DISTRICT JUDGE